WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Jones, | No. CV-17-00616-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Ryan D. McCarthy,[1] Secretary of the Army, | |
| Defendant. | |

Plaintiff Stacy Jones, a civilian employee of the Department of the Army, alleges employment discrimination on the basis of race and sex, and retaliation for participating in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e).  Defendant seeks summary judgment on Jones's claims.  (Doc. 57.)  Jones filed a response to Defendant's Motion. (Doc. 63.)  For the following reasons, the Court will grant Defendant's Motion for Summary Judgment.

//
//
//
//

---

[1] Jones filed this action against Robert M. Speer, Acting Secretary of the Army. Ryan D. McCarthy was subsequently appointed as Secretary of the Army.  Therefore, pursuant to Fed. R. Civ. P. 25(d), Secretary McCarthy is substituted as the named defendant.

## I.     Background[2]

Jones's claims arise out of her employment as Director of Army Community Services (ACS) at Fort Huachuca, Arizona, a position she held until 2015. (Doc. 58, ¶ 1.) During Jones's tenure as ACS Director, Dennis Maruska, Director of Family Morale, Welfare and Recreation, Fort Huachuca, was Jones's first-level supervisor, and Thomas Borer, Deputy Garrison Commander, was Jones's second-level supervisor.  (*Id.* at ¶ 2.) Colonel Thomas Boone became the Fort Huachuca Garrison Commander and Jones's third-level supervisor in April 2014.  (*Id.* at ¶ 3.)

In October 2012, Jones was removed from her position as ACS Director and detailed to a nonsupervisory position based on allegations that she misappropriated funds and created a hostile work environment. (*Id.* at ¶ 4.) Jones filed an EEO complaint alleging she was removed from her position because of her race, sex, religion, and in retaliation for bringing to the attention of the Chief, Installation Management Command (IMCOM), alleged negative comments made by Colonel Faulkner about victims of sexual assault. (*Id.* at ¶ 5; Doc. 63, pp. 6, 10; Doc. 63-2, p. 23.)

On April 2, 2014, Jones resolved her 2012 EEO complaint through a negotiated settlement agreement (2014 NSA). (*Id.* at ¶ 6.)  Under the terms of the 2014 NSA, Jones was reinstated as ACS Director and Jones withdrew her EEO Complaint. (Doc. 58, ¶ 7; Doc. 63-2, pp. 54-57.)  Jones also waived any right to commence further litigation "concerning the matters raised in, or reasonably related to, the allegations contained in . . . [the subject] EEO complaint." (Doc. 63-2, p. 56.)

Jones alleges Maruska had a meeting with her two or three days after she was reinstated and told her that Borer and Colonel McFarland, the garrison commander who succeeded Faulkner, were upset with him because "he didn't do what he needed to do to

---

[2] Although the Court struck Jones's Statement of Facts (Doc. 64) for failure to comply with LRCiv. 56.1(b), and gave Jones the opportunity to file a statement of facts in compliance with the rules (Doc. 65), she did not do so.  Nonetheless, the facts asserted by the parties in their memorandum and by the Defendant in its statement of facts are largely undisputed.  Moreover, the Court notes that Jones's stricken three-page statement of facts contains only one fact that is not asserted in Jones's response and that additional fact is unsupported.

"get rid of [Jones]." (Doc. 58, ¶ 8.)

On November 14, 2014, Jones filed a second EEO Complaint alleging numerous actions by Boone, Borer and Maruska with respect to duty assignments, training, performance, and creating an alleged hostile work environment, motivated by race, gender and reprisal, including: failing to align the Sexual Harassment and Response Program (SHARP) under ACS; making negative statements regarding Jones's return as ACS Director; taking duties and authority from her; and directing Jones's subordinate budget personnel to report ACS budget concerns regarding the Table of Distribution and Allowances directly to Resource Management. (*Id.* at ¶ 9.) In December 2014, Jones amended her EEO complaint to include additional allegations of discrimination and retaliation. (*Id.* at ¶ 10.)

On February 3, 2015, Jones and Installation Management Command Headquarters (IMCOM HQ) executed a negotiated settlement agreement (2015 NSA) to resolve the second EEO complaint, in which the parties agreed that Jones would be reassigned from her position as ACS Director in Fort Huachuca to a nonsupervisory position as an analyst at IMCOM HQ in San Antonio, Texas, within 60 days of execution of the agreement. (*Id.* at ¶12.) Jones agreed to withdraw her EEO complaint, accept the terms of the agreement in full settlement of all matters related to the EEO Complaint, and refrain from seeking further action, including lawsuits, "concerning the issues, claims or facts" contained in the EEO Complaint. (*Id.*) The 2015 NSA became effective on the date it was signed by all parties – February 3, 2015. (*Id.*) Dan Davis, IMCOM HQ Chief of Staff, signed the 2015 NSA on behalf of IMCOM HQ. (*Id.* at ¶ 13.) Davis made arrangements for Jones to have a position in San Antonio. (*Id.* at ¶ 14.) Jones never worked for Davis and Davis was not in Jones's supervisory chain of command at Fort Huachuca. (*Id.* at ¶ 15.)

After signing the 2015 NSA, Jones requested to modify the agreement to allow additional time for her to move to Texas. (*Id.* at ¶¶16, 17, 18.) On February 25, 2015, the parties executed a written modification allowing Jones until May 31, 2015 to report to San Antonio. (*Id.* at ¶ 18.) All other provisions of the 2015 NSA remained in effect and valid.

- 3 -

(*Id.* at ¶ 19.) Jones's supervisors, Maruska, Borer and Boone, were not involved in negotiating the 2015 NSA or its modification. (*Id.* at ¶ 20.)

In May 2015, Jones reported to Fort Sam Houston, Texas. (Id. at ¶ 21.) Jones continues to work for the Army. (*Id.* at ¶ 22.)

On July 19, 2017, Jones filed this action. (Doc. 1.) Jones seeks relief under Title VII, alleging claims of disparate treatment, hostile work environment, retaliation, and constructive discharge, as a result of: (a) the 2015 NSA, under which she was reassigned from Fort Huachuca, Arizona, to IMCOM HQ, San Antonio, Texas; (b) her March 9, 2015 removal from consideration to join the board of directors of Sierra Vista Regional Hospital; (c) Maruska denying her access to the ACS Table of Distribution and Allowances (TDA); failing to include her, on March 18, 2015, in decisions regarding the TDA; and directing subordinate personnel to report ACS budget concerns regarding the TDA directly to Resource Management; (d) sometime after June 2014, Boone, Borer and Maruska denying Jones's request to place SHARP under ACS, but placing SHARP under ACS after she transferred to San Antonio; and (e) on June 25, 2015, after Jones transferred to San Antonio, Lieutenant Colonel Gabriel Mesa, interim ACS Director, encouraging ACS employees to file worker's compensation claims if they felt Jones's actions negatively affected them while she was their supervisor. (*Id.* at ¶ 23.) Jones, who is African American, alleges that these acts were motivated by race, sex, and retaliation for engaging in protected activity. (*Id.*)

Defendant seeks summary judgment, arguing that Jones's claims relating to reassignment, SHARP realignment and TDA/delegation are barred by the 2015 NSA and the remainder of the claims fail for lack of evidence. (Doc. 57.)

**II.      Summary Judgment Standard**

Summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) that after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins.*

*Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). "Only disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

When considering a motion for summary judgment, the court accepts as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; the non-moving party must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that plaintiff must present affirmative evidence to defeat properly supported motion for summary judgment); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (nonmovant must present more than "some metaphysical doubt as to the material facts"). A summary judgment motion cannot be defeated "with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**III.   Discussion**

**A. Claims precluded by the 2015 NSA**

Defendant asserts that the 2015 NSA precludes Jones's claims for discrimination, retaliation, and hostile workplace for claims relating to her reassignment to San Antonio, the SHARP realignment, TDA decisions and delegation of duties, and critical statements by her supervisors which were all part of her 2014 EEO complaint. (Doc. 57, pp. 9-11.) The Court agrees.

"[P]ublic policy favors voluntary settlement of employment discrimination claims brought under Title VII." *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 460–61 (9th Cir. 1989) (quotation marks and citation omitted). A release of Title VII claims is valid if it was a "voluntary, deliberate, and informed waiver." *Id.* (internal quotation marks and citation omitted). Generally, in civil rights cases, the party attempting to enforce the release bears the burden of establishing its validity. *Judie v. Hamilton*, 872 F.2d 919, 924 (9th Cir. 1989) (citing *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981)). "The determination of whether a waiver of Title VII was 'voluntary, deliberate, and informed' is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Stroman*, 884 F.2d at 462 (internal quotation marks and citation omitted). The court considers "the clarity and lack of ambiguity of the agreement, the plaintiff's education and business experience, the presence of a noncoercive atmosphere for the execution of the release, and whether the employee had the benefit of legal counsel." *Id.* (internal quotation marks and citations omitted). Applying these factors, the Court concludes that Jones's waiver of her Title VII claims was voluntary, deliberate and informed.

The terms of the 2015 NSA are clear. The agreement is short, with the main settlement provisions contained in paragraphs three and four. In Paragraph 3, Defendant agreed to reassign Jones to a Management Analyst position at Fort Sam Houston, pay for her relocation expenses, including realtor fees, and process her travel vouchers within sixty days. In Paragraph 4, Jones agreed to withdraw her EEO complaint, relocate to Fort Sam Houston, and accept the terms of the agreement in full settlement of all matters related to the EEO Complaint, including to refrain from seeking further action, including lawsuits, "concerning the issues, claims or facts" contained in the 2014 EEO Complaint. (Doc. 58, ¶ 12.)

The parties do not provide information about Jones's education and business experience, but her position and responsibilities show that she possesses the level of education and experience necessary to understand the agreement. Jones testified that as

the Director of Army Community Services she was responsible for oversight of Family Programs for the Army, which included services to support families and veterans, including Family Advocacy, Financial Readiness, Information and Referral, Lending Closet, Exceptional Family Member Program, and Survivor Outreach. (Doc. 58-2, p. 9.) Moreover, Jones was familiar with the EEO process, including settlement; a year earlier, Jones resolved her October 2012 EEO Complaint by entering into the 2014 NSA with the Defendant. (*Id.* at ¶ 6.) In addition, on February 25, 2015, Jones, on her own, successfully requested and received a modification of the 2015 agreement, increasing her time to report to Houston by approximately sixty days. (*Id.* at ¶¶ 17-18.)

It does not appear that Jones was represented by counsel at the time she entered into the 2015 NSA. There is no information as to whether employment of counsel was discussed. Jones was represented by counsel in the 2014 NSA. (Doc. 63-2, pp. 55, 57.)

Finally, there is no indication that there was a coercive atmosphere for the execution of the agreement. Jones's supervisors were not involved in any way with the NSA, in which Dan Davis, IMCOM Chief of Staff, acted on behalf of the Defendant. (*Id.* at ¶¶ 13-14, 20.) Jones never worked for Davis and Davis was not in Jones's supervisory chain of command at Fort Huachuca. (*Id.* at ¶ 15.)

Jones's deposition testimony further supports the Court's conclusion that Jones's decision to enter into the 2015 NSA was voluntary, deliberate, and informed. She testified that she signed the NSA due to the working conditions at Fort Huachuca and to put the issues raised in her EEO Complaint behind her. (*Id.* at ¶¶ 27, 28.) She testified that she understood everything in the agreement when she signed it, and, at that time, she had resolved to transfer to San Antonio. (*Id.* at ¶¶ 29, 30.) She admitted that no one told her she would lose her job or otherwise threaten her if she did not sign the 2015 NSA. (*Id.* at ¶¶ 25, 26.)

Jones does not respond to Defendant's argument that the 2015 NSA bars her claims related to her reassignment to San Antonio, the SHARP realignment, TDA decisions and delegation of duties, and critical statements by her supervisors. In her Response argument

pertaining to constructive discharge, she makes two assertions which are arguably relevant to the enforceability of the 2015 NSA—that she was bullied into taking the reassignment to San Antonio and that she was threatened with termination if she did not go. (Doc. 63, p. 11.)  Neither supports an inference that Jones was forced to sign the 2015 NSA or threatened with termination if she did not.  Jones's deposition transcript establishes that what she characterizes as bullying and threats occurred after she had entered into the 2015 NSA, and related only to her statements that she wanted to withdraw from the agreement. Jones testified that "after I signed an NSA to relocate, I changed my mind and I told Mr. Carruthers I did not want to leave.  Mr. Carruthers told me I had to leave or lose my job." (Doc. 63-2, pp. 47-48.)   Jones's subsequent change of heart about entering into the agreement is insufficient to undo the agreement. At that point, she had voluntarily resolved her claims in an enforceable agreement. *See Worthy v. McKesson Corp.,* 756 F.2d 1370, 1373 (8th Cir. 1985) ("If a party to a Title VII suit who has previously authorized a settlement changes his mind ..., that party remains bound by the terms of the agreement.") (quotation marks and citation omitted); *see also Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978) ("Assuming both the power of the attorney to bind his client and the validity of the agreement struck, a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship.")[3]

For the foregoing reasons, based on the undisputed evidence, the Court concludes that the 2015 NSA bars Jones's claims for discrimination and retaliation based on her reassignment to San Antonio,[4]  the SHARP realignment, TDA decisions and delegation of

---

[3] In Jones's Statement of Facts, which the Court struck, Jones asserts only one fact that is not mentioned in her Response—that she changed her mind regarding transfer within the seven-day rescission period.  (Doc. 64, p. 2.)   Jones fails to cite any evidence that supports her assertion that there was a seven-day rescission period.  The agreement does not include a rescission period.  It states: "This agreement will become effective on the date it is signed by all parties," which was February 5, 2015. (Doc. 58-2, p. 78.)  As noted above, Jones does not address the effect of the 2015 NSA in her response; nor does she argue rescission.

[4] Jones characterizes her transfer to San Antonio as a constructive discharge. To the extent such characterization is valid, Jones's constructive discharge claim fails for the additional reason that she did not resign from the Army. (Doc. 58, ¶ 22.) Resignation is a necessary element of a constructive discharge claim.  *See Green v. Brennan*, __U.S. __,

- 8 -

duties,[5] and critical statements by her supervisors. *See Pardi v. Kaiser Found. Hosps.,* 389 F.3d 840, 848 (9th Cir. 2004) (affirming summary judgment enforcing release of ADA claims where plaintiff failed to introduce evidence showing that the agreement was procured by duress or other basis that would render it invalid).[6]

**B. Jones fails to establish the elements of a claim for race, sex or discrimination or retaliation for her remaining claims.**

**1. Applicable Law**

To establish a prima facie claim for discrimination under Title VII, Jones must either provide direct evidence suggesting that an employment decision was made based on an impermissible criterion, or meet the four-part *McDonnell Douglas* test for circumstantial evidence. *See EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009). That four-part test requires Jones to show that she: (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). To establish a prima facie case of retaliation under Title

---

136 S.Ct. 1769, 1777 (2016) (constructive discharge requires proof that (1) the employee was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign, and (2) she actually resigned).

[5] As noted above, Jones does not respond to Defendant's argument that claims related to the TDA decisions and delegation of duties are barred by the 2015 NSA. The Court notes that the TDA claims relate to conduct that allegedly occurred in March 2015, after the NSA took effect. The March 2015 claims, however, cover the same issues that Jones raised in her 2014 EEO Complaint —Jones's authority as ACS Director to have input into the ACS budget and Defendant's delegation of her authority to her subordinates. Because Jones's duties and responsibility for the ACS TDA and budget "concern[] the issues, claims or facts" contained in her 2014 EEO Complaint, these claims are barred by the 2015 NSA. In addition, because Jones agreed in the 2015 NSA to resign as ACS Director, it cannot be said to be discriminatory to not allow her to perform the responsibilities of that position.

[6] To the extent that Jones is also asserting claims related to or based on facts underlying claims she asserted in her 2012 EEO Complaint (relieving Jones of her duties as ACS Director and moving Jones's office to "isolation" in a chapel—both in October 2012) (Doc. 63, p. 6), those claims are similarly barred by Jones's 2014 NSA, in which Jones, who was represented by counsel, waived her right to pursue claims based on the same conduct. (See Doc. 58, ¶¶ 4-7; Doc. 63-2, pp. 54-57.) Jones does not dispute either the applicability of this release provision or its enforceability.

- 9 -

VII, Jones must show (1) she was engaged in a protected activity, (2) she was thereafter subjected by her employer to an adverse employment action,[7] and (3) there was a causal link between the protected activity and the adverse employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004).

"After a prima facie case is established, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1559 (9th Cir. 1994) (internal quotation marks and citation omitted). Retaliation claims are included within this framework. *Id.* at n.11 (citations omitted).

**2. Analysis**

There are two claims alleged in Jones's First Amended Complaint which are not precluded by her prior NSAs. Neither, however, is supported by any evidence.

**a. Removal from consideration for the Sierra Vista Regional Hospital board of directors.**

Jones offers no support for her claim that her supervisors prevented her from being selected to serve on the board of directors of Sierra Vista Regional Hospital, let alone that they did so for a discriminatory or retaliatory purpose. Jones's Response does not address Defendant's arguments on this point or mention the board position. (Doc. 63.) The undisputed evidence presented by Defendant shows that the hospital has no connection to

---

[7] "[A] wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.2000); *see also Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1125 (9th Cir. 2000) (adverse action not only applies to terms and conditions of employment "in the narrow sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . in employment.'") *(quoting Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998)). Adverse employment actions can include a transfer of job duties, undeserved performance ratings, transfers to another job of the same pay and status, and dissemination of unfavorable job references. *Ray*, 217 F.3d at 1242 (citations omitted). Additionally, for purposes of a Title VII retaliation claim, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id*. at 1243 (footnote omitted).

Fort Huachuca. (*See* Doc. 57, p. 11 (citing Doc. 58, ¶ 37).) Jones met briefly about board membership with someone whom she believed to be on the board and whose name she does not remember. (Doc. 58, ¶ 38). Jones understood that the person she spoke to would contact her supervisors for a reference. (*Id*.) Jones was not contacted again about the board position. (*Id*. at ¶¶ 38-39.) Jones has no firsthand knowledge as to why the hospital did not select her for the board. (*Id*. at ¶ 45.) Jones does not know who would have made the decision whether to select her for the board. (*Id*. at ¶ 43) Jones's immediate supervisors, Maruska and Borer, had no knowledge about this matter. (*Id*. at ¶ 46.) Summary judgment is properly entered for Defendant on this claim.

### b. Worker's compensation claims.

Jones claims that at a June 2015 meeting, Mesa encouraged Jones's former subordinate employees to file worker's compensation claims against her. (Doc. 58-5, p. 41.) In her Response to Defendant's Motion for Summary Judgment, Jones asserts that it was Maruska and Borer who made the comments. (Doc. 63, pp. 9-10 (citing Doc. 63-2, pp. 49-52).) Regardless of the speaker, Jones points to no admissible evidence to support this claim. Jones did not attend the meeting (Doc. 58, ¶ 78; Doc. 62-2, p. 49); she heard from someone, whose name she does not recall, that after her departure from Fort Huachuca, interim ACS Director Mesa held a meeting where he, Maruska, and Borer encouraged Jones's former subordinates to file such claims against her. (Doc. 58, ¶ 79; Doc. 63, pp. 9-10 (citing Doc. 63-2, pp. 49-52).) This hearsay evidence is insufficient to support Jones's claim that these individuals discriminated or retaliated against her. Moreover, Defendant has provided undisputed evidence that no prohibited conduct occurred and that there was a legitimate, nondiscriminatory reason for the meeting and the information provided.[8] Jones does not respond to or refute Defendant's arguments or

---

[8] In a declaration, Mesa states that after becoming interim Director, Mesa received complaints about Jones's actions prior to her reassignment. (Doc. 58, ¶ 74.) In coordination with the Fort Huachuca Employee Assistance Program (EAP), Mesa held the meeting to inform the employees about potential avenues for addressing alleged injuries. (*Id.* at ¶¶ 75, 76.) Mesa did not reference specific individuals or Jones and did not discuss specific instances or complaints. (*Id.* at ¶76.) The focus of the meeting was to provide information about the process for addressing alleged injuries, the availability of EAP, and the action employees needed to take to obtain assistance. (*Id.*) Jones has no knowledge that anyone

evidence. For all of these reasons, this claim does not survive summary judgment.

### C. Jones Fails to Show She was Subjected to a Hostile Work Environment

#### 1. Applicable law

To prevail on a claim of hostile work environment based on race, sex or retaliation, Jones must establish that (1) she was subjected to verbal or physical conduct of a harassing nature that was based on her race or sex or out of retaliation for protected activity, (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive" to alter the conditions of her employment and create an abusive working environment. *Fuller v. Idaho Dep't of Corr.,* 865 F.3d 1154, 1161 (9th Cir. 2017) (sex); *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir.2008) (race); *Ray,* 217 F.3d at 1244-45 (retaliation). The conduct must be extreme in order to amount to a change in the terms and conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). To determine whether an environment is sufficiently hostile, the court considers "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ray,* 217 F.3d at 1245 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)); *see also Kortan v. California Youth Auth.,* 217 F.3d 1104, 1110 (9th Cir. 2000) (mere utterance of epithet which engenders offensive feelings, without more, does not affect conditions of employment to sufficiently significant degree necessary for violation of Title VII) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). Additionally, Jones must show that her employer is liable for the conduct that created the environment. *Fuller,* 865 F.3d at 1161 (citation omitted).

#### 2. Analysis

Jones fails to identify any actionable verbal or physical conduct of a harassing nature, based on race or sex or retaliation, that occurred after the 2015 NSA, or was actionable. Jones's allegations concerning Mesa's alleged encouragement of worker's

---

filed a worker's compensation claim as a result of the meeting. (*Id.* at ¶ 80.)

1  compensation claims against Jones does not factor into this analysis because Jones no
2  longer worked at Fort Huachuca at that time.  Therefore, she could not have been subjected
3  to a hostile workplace as a result of Mesa's conduct.   Also, as set forth above, Jones fails
4  to substantiate her claim that Mesa encouraged such claims.

5  Jones points to inappropriate comments by Maruska and Colonel Faulkner as
6  evidence of harassment.  But Jones fails to demonstrate that either of these comments is
7  actionable.  The first comment was allegedly made by Maruska in May 2014, soon after
8  she was reinstated as ACS Director pursuant to the 2014 NSA; Maruska told her that Boone
9  and Borer "were 'mad at him because they didn't want [Jones] to return to the position as
10 Director,' and that 'he didn't do what he needed to do to get rid of [Jones].'"  (Doc. 63, p.
11 9 (citing Doc. 63-2, pp. 29, 38; Doc. 63-3, pp. 2-3).)  Jones reported this comment to the
12 Director of EEO for IMCOM and the Director of IMCOM Central.  (Doc. 63, p. 9 (citing
13 Doc. 63-3, p. 2: *see also* Doc. 58-4, p. 3, ¶ 20.))  The 2015 NSA prohibits Jones from
14 pursuing legal action based on Maruska's comment.

15 In a separate section of her Response, Jones also asserts that Colonel Faulkner told
16 her that he had been "'bullied' by African-Americans as a youth" and made comments to
17 Plaintiff "about how Black people eat fried chicken and watermelon all the time."  (Doc.
18 63, p. 13 (citing Doc. 63-2, pp. 24-25).)  While these statements are certainly offensive,
19 Jones fails to present evidence to tie the comments to a hostile environment claim because
20 she does not specify when they were made.  Consequently, she cannot establish that the
21 offensive comments, if made during an actionable time period, affected conditions of
22 employment to the sufficiently significant degree necessary to establish a violation of Title
23 VII, an essential element of her claim.  *Kortan*, 217 F.3d at 1110.  Therefore, Defendant is
24 entitled to summary judgment on Plaintiff's hostile work environment claim.
25 //
26 //
27 //
28 **//**

**D. Conclusion**

For the foregoing reasons,

IT IS ORDERED THAT Defendant's Motion for Summary Judgment (Doc. 57) is GRANTED.

The Clerk of Court is directed to enter judgment accordingly and to close the file in this action.

Dated this 18th day of August, 2020.

_____
Honorable Jennifer G. Zipps
United States District Judge